UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DANIEL CASTRO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-13133** |
| **W.S. "SANDY" MCCAIN** | **SECTION "G"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.     Factual and Procedural Background

The petitioner, Daniel Castro ("Castro"), is a convicted inmate incarcerated in the Raymond Laborde Correctional Center in Cottonport, Louisiana.[2] On November 21, 2013, Castro was indicted by an Orleans Parish Grand Jury for the aggravated rape of "Angelica."[3]

Blanche, Angelica's mother, met Castro while he was performing construction work at her home. They later became romantically involved, and Castro moved into the home with Blanche

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 6, Indictment, 11/21/13. In accordance with La. Rev. Stat. Ann. § 46:1844(W), the state appellate court used a pseudonym to refer this sex crime victim as Angelica and her mother as Blanche. This Court will do the same for consistency with the state appellate court's opinion.

and her daughter, Angelica, who was twenty-five years old at the time.[4]  Angelica is severely mentally disabled with an IQ less than 70, and was under Blanche's full-time care.  Angelica requires assistance with virtually every daily activity, including brushing her teeth, bathing herself, and using the bathroom.  She is able to dress herself but requires assistance with fasteners, such as zippers, snaps, or buttons.  Angelica also wears a diaper.

On the morning of September 26, 2013, Jones left the house to go to the bank.  Both Angelica and Castro remained at home.  Before leaving the house, Blanche locked Angelica inside of Angelica's bedroom, because she suspected that Castro had previously engaged in inappropriate behavior with Angelica.  Angelica did not know how to unlock the door.

When Blanche left, Castro appeared to be sleeping on the floor of the front room of the shotgun style house.  Castro had a key to the front door of the house, but did not have a key to Angelica's bedroom door.

Blanche returned home approximately thirty minutes to an hour later to find Angelica's bedroom door unlocked, and Angelica was not in her bedroom.  Blanche discovered her daughter and Castro in the back bedroom, where she and Castro slept, and both Angelica and Castro were naked in the bed.  She observed Castro "cleaning" Angelica's genitals with the bed sheet.  Blanche chased Castro out and wiped the side of Angelica's vagina with her hand and felt what she believed to be semen.  She then called the police and Castro was arrested before he could leave the house.

Several of the DNA samples taken from various areas of Angelica's breasts, shoulder, and outer genital areas conclusively pointed to Castro as the sole or a major contributor, although no

---

[4]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Castro*, 206 So.3d 1059, 1061-63 (La. App. 4th Cir. 2016); St. Rec. Vol. 6 of 6, 4th Cir. Opinion, 2016-KA-0284, pp. 2-6, 12/14/16.

seminal fluid was discovered. Angelica was one of the major contributors to the DNA found on the swab taken of Castro's penis.

Castro was tried before a jury on September 21, 22, and 23, 2015, and found guilty of attempted aggravated rape.[5] On October 29, 2015, the Trial Court denied Castro's motion for new trial and post-verdict judgment of acquittal.[6] The Trial Court then sentenced Castro to serve 50 years in prison without benefit of parole, probation, or suspension of sentence.[7]

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Castro's appointed counsel asserted that the evidence was insufficient to support the verdict.[8] On December 14, 2016, the Louisiana Fourth Circuit affirmed the conviction, finding the claim meritless and the evidence sufficient to prove his guilt of attempted aggravated rape.[9]

On January 14, 2017, Castro signed a writ application to the Louisiana Supreme Court seeking review of that ruling.[10] The Court denied the writ application without stated reasons on September 29, 2017.[11] Castro's conviction was final under federal law ninety (90) days later, on December 28, 2017, when he did not file a writ application with the United States Supreme Court.

---

[5]St. Rec. Vol. 1 of 6, Trial Minutes, 9/21/15; Trial Minutes, 9/22/15; Trial Minutes, 9/23/15; St. Rec. Vol. 3 of 6, Trial Transcript, 9/21/15; Trial Transcript, 9/22/15; St. Rec. Vol. 4 of 6, Trial Transcript, 9/23/15; St. Rec. Vol. 5 of 6, Voir Dire Transcript, 9/21/15.

[6]St. Rec. Vol. 4 of 6, Sentencing Transcript, 10/29/15; St. Rec. Vol. 3 of 9, Trial Court Order, 10/29/15; Motion for New Trial and for Post-Verdict Judgment of Acquittal, 10/29/15.

[7]St. Rec. Vol. 1 of 6, Sentencing Minutes, 10/29/15; St. Rec. Vol. 4 of 6, Sentencing Transcript, 10/29/15.

[8]St. Rec. Vol. 4 of 6, Appeal Brief, 2016-KA-0284, 8/25/16.

[9]*Castro*, 206 So.3d at 1059; St. Rec. Vol. 6 of 6, 4th Cir. Opinion, 2016-KA-0284, 12/14/16. Castro also had other writ applications before the state courts while his direct appeal was pending, none of which are relevant to resolution of this petition.

[10]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 17-KO-0235, 2/3/17 (dated 1/14/17).

[11]*State v. Castro*, 227 So.3d 285 (La. 2017); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2017-KO-0235, 9/29/17.

*Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the U.S. Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

## II.     Federal Petition

On December 21, 2017, the clerk of this Court filed Castro's federal petition for habeas corpus relief in which he asserts that the verdict was contrary to the law and evidence and guilt was not established beyond a reasonable doubt.[12]

The State filed a response in opposition to Castro's federal habeas petition asserting that the claim was not properly exhausted and now is in technical procedural default.[13]  Alternatively, the State argues that the claim is meritless and Castro is not entitled to federal habeas relief.

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[14] applies to this petition, which is deemed filed in this Court no later than November 14, 2017.[15]  The threshold questions on habeas review under the amended statute are

---

[12]Rec. Doc. No. 3.

[13]Rec. Doc. No. 13.

[14]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[15]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of this Court filed Castro's original deficient petition on November 20, 2017, when it was received.  The case was later opened after payment of the filing fee, following the denial of pauper status.  Castro signed and dated the original petition on November 14, 2017.  This is the earliest date appearing in the record on which he could have handed the pleading to

whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In its opposition response, the State concedes timeliness and asserts that Castro failed to properly exhaust state court review of his claims, because his Louisiana Supreme Court writ application was not timely filed. In reaching its conclusion, the State did not address the prisoner mailbox rule, as the Court has done above. The State offered no evidence to establish that Castro did not timely submit his pleadings to prison officials for mailing to the Louisiana Supreme Court and that court did not discuss the timeliness of the petition in its one-word, summary denial. Without something more, the State has failed to meet its burden on this point. Nevertheless, even if review of the claim was not properly exhausted, this Court may address the claim because it is meritless. 28 U.S.C. § 2254(b)(2).

## IV. Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2)

---

prison officials for mailing to a federal court. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to <u>his</u> *pro se* petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

5

(2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**V.     Sufficiency of the Evidence**

Castro alleges that the evidence was insufficient to prove that he attempted to engage in sexual intercourse with Angelica, because the DNA evidence did not include evidence of semen or Angelica's blood on his penis and Blanche's testimony was not credible. With this, he asserts that the State did not exclude every reasonable hypothesis of innocence.

Castro asserted this claim in his direct appeal to the Louisiana Fourth Circuit. After careful review of the evidence and testimony, the Court held that the evidence was sufficient to prove that

7

Angelica was mentally disabled, and Castro would have had to help Angelica get out of her bedroom and take off her clothes, since they were both found naked in the bed.  The Court found the evidence of the attempted rape to have been credible, including Blanche's testimony, and the fact that Castro's DNA evidence was present on Angelica's vagina and other body parts, most likely transferred by mouth, and her DNA was present on his penis.  The Court also concluded that evidence of actual penetration was not required to prove attempted aggravated rape.  This was the last reasoned opinion on the issue.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991)

Claims of insufficient evidence present a mixed question of law and fact.  *Davila v. Davis*, 650 F. App'x 860, 866 (5th Cir. 2016); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  The Court must therefore give deference to the state courts' findings unless the decision was contrary to, or involved an unreasonable application of Supreme Court law.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), relied on by the state appellate court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011).  Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.

In Louisiana, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."  La. Rev. Stat. Ann. § 15:438.  However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson*

and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 209 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *accord Williams*, 693 So.2d at 209. The appropriate standard for this Court on habeas review remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial."). The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-

finder.  *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)).  All credibility choices and conflicting inferences must be resolved in favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).  Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

In this case, Castro was convicted of the attempted aggravated rape of Angelica, who was mentally handicapped, in violation of La. Rev. Stat. Ann. § 14:42.  At the time, to prove aggravated rape (now designated first degree rape), the State had to establish beyond a reasonable doubt that the defendant engaged in anal, oral, or vaginal intercourse with the victim, and the victim was physically or mentally infirmed and unable to resist the act.  *See State v. Mitchell*, 163 So.3d 858, 866-67 (La. App. 2d Cir. 2015).  The statute also defines "mental infirmity" as one where the victim has an intelligence quotient of seventy or below.  La. Rev. Stat. Ann. § 14:42(C)(2).

To prove an attempt to commit a crime, the evidence must show that the defendant had a specific intent to commit the crime and engaged in an act or omission for the purpose of and tending directly toward accomplishing the crime.  La. Rev. Stat. Ann. § 14:27(A).  Under Louisiana law, "attempt" is "a separate but lesser grade of the intended crime," and even though it appears at trial that the crime intended or attempted was actually perpetrated by the person, he may be convicted of an attempt to commit the crime.  La. Rev. Stat. Ann. § 14:27(C); *State v. York*, 121 So.3d 1226, 1231 (La. App. 2d Cir. 2013).

In this case, Castro does not contest the fact that the evidence proved Angelica had an IQ of less than 70, establishing that she had a mental infirmity that prevented her from resisting him; nevertheless, the psychiatric testimony confirmed this beyond a reasonable doubt.[16] The evidence also proved that Angelica was found naked with Castro in her mother's bed, and he too was naked.[17] Angelica was not capable of manipulating the door lock on her bedroom door or able to unfasten her clothing to get naked.[18] Castro also was discovered attempting to wipe Angelica's vagina with a sheet when her mother walked into the room.[19] The evidence also established Castro's penis had Angelica's DNA on it, and her outer vaginal area had his DNA on it. Where the examining physician swabbed Angelica's breasts and the "hickey" on her shoulder, Castro was the major DNA contributor.[20] Although no semen was found, the swabs indicated that Castro's saliva or other bodily fluid was present on Angelica's breasts, shoulder, and vaginal area as a result of contact with Castro.[21]

Thus, the jury heard ample evidence tending to prove that Castro intended or attempted to engage in vaginal, oral, or anal sex with Angelica, a mentally impaired individual, who was incapable of resisting his acts, and the evidence was more than sufficient for a reasonable jury to have reached the guilty verdict. The credibility determinations made by the jury are not for this

---

[16]St. Rec. Vol. 4 of 6, Trial Transcript, pp. 225-26 (Dr. Salcedo), 9/22/15.

[17]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 80-82 (Blanche), 9/22/15.

[18]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 74, 103, 106 (Blanche), 9/22/15.

[19]St. Rec. Vol. 3 of 6, Trial Transcript, p. 109 (Blanche), 9/22/15.

[20]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 145, 147, 158-59 (Dr. Mehta), 9/22/15.

[21]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 254-260, 262-63 (Ms. Pinell), 9/22/15.

court to reevaluate, especially considering the overwhelming circumstantial evidence of Castro's guilt.

Castro has failed to establish that the state courts' denial of relief was contrary to or an unreasonable application of federal law.  He is not entitled to relief on this issue.

**VI.     Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Castro's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[22]

New Orleans, Louisiana, this  18  day of July, 2018.

*[signature]*
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[22]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.